**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>DEBORAH A. O'CONNELL and<br>DAVID F. O'CONNELL,<br><br>　　　　　　Debtor<br><br>DEBORAH A. O'CONNEL and<br>DAVID F. O'CONNELL,<br><br>　　　　　　Plaintiffs<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　　　Defendant | Chapter 13<br>Case No. 11-10940-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 12-1032 |

**MEMORANDUM OF DECISION**

I.　　INTRODUCTION

By their amended complaint (the "Complaint") in this adversary proceeding, the plaintiffs and chapter 13 debtors, Deborah A. and David F. O'Connell (the "Plaintiffs"), seek to rescind their mortgage loan, now held by Defendant Wells Fargo Bank, N.A., under the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mᴀss. Gᴇɴ. Lᴀᴡs ch. 140D.  The matter is before me on Wells Fargo's motion to dismiss the Complaint for failure to state a claim on which relief can be granted.  Wells Fargo argues that the time to rescind expired before the Plaintiffs elected to do so; the Plaintiffs reply that there is no time limit on exercise of the right to rescind when that right is exercised defensively, by recoupment, which they purport to be doing here.  For the reasons set forth below, the Court holds that the defense of recoupment is not a means by which the option to rescind, where it exists at all, can first be exercised

after its statutory expiration.  Therefore, the complaint fails to state a claim on which relief can be granted.  See FED. R. CIV. P. 12(b)(6), made applicable by FED. R. BANKR. P. 7012(b).

## II.     CORE STATUS

This matter concerns the disposition of Wells Fargo's secured claim in this case, requires a determination of the validity and extent of Wells Fargo's lien on property of the estate, and involves a counterclaim by the estate against an entity, Wells Fargo, that has filed a claim against the estate.  In each of these respects, it is a core proceeding over which this Court has authority to enter final orders and judgments.  28 U.S.C. § 157(b)(1), (b)(2)(B), (C), and (K) (core proceedings include claims against the estate, counterclaims by the estate against persons filing claims against the estate, and determinations of the validity, extent, or priority of liens).  As it happens, the counterclaim is wholly decided by disposition of the other core matters, and therefore adjudication of the counterclaim in the bankruptcy court does not run afoul of the constitutional concerns in *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011) (Congress may not authorize bankruptcy judges to adjudicate counterclaims that would not necessarily be resolved in the claims allowance process).

## III.    FACTS

In February 2005, the Plaintiffs refinanced the first mortgage on their home, located at 300 Lunns Way, Plymouth, Massachusetts (the "Property") by obtaining a loan in the principal amount of $210,000 from American Mortgage Network, Inc. (the "Creditor") (the "Transaction").  In conjunction with the loan, the Plaintiffs gave the Creditor a promissory note (the "Note") and, to secure it, granted a mortgage (the "Mortgage") to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the Creditor.  Wells Fargo purports to be the current holder of the Note and assignee of the Mortgage.

On February 8, 2011, the Plaintiffs filed a petition under Chapter 13 of the Bankruptcy Code.[1] Wells Fargo timely filed a proof of a secured claim for $222,480.33 owing on the Note, secured by the Mortgage on the Property. Approximately one year later, the Plaintiffs commenced the present adversary proceeding.

In and by their Complaint, the Plaintiffs seek a determination under the MCCCDA that the Transaction that resulted in the Note and Mortgage presently held by Wells Fargo is rescinded and that the Note and Mortgage are therefore void. The MCCCDA gives consumer borrowers three business days to rescind a mortgage transaction. The three-day period begins when the parties consummate the transaction or after the lender has delivered certain information and forms concerning the right to rescind, whichever occurs later. The Plaintiffs allege that the Lender failed to provide each of them in their respective capacities as borrowers with two copies (for a total of four) of the right to rescind the Transaction, as required by 209 MASS. CODE REGS. 32.23(2)(a) (relating to Disclosure of Consumer Credit Costs and Terms). Instead, the Creditor provided the Plaintiffs with a total of only two copies. The Plaintiffs argue that the Creditor's failure to deliver the requisite number of copies of the rescission notice gives them a continuing right to rescind the Transaction, even though they consummated the Transaction more than seven years ago. The Plaintiffs further seek orders (i) declaring the Mortgage null and void, (ii) declaring that the Plaintiffs are not liable for any finance or other accrued charges, (iii) offsetting all money and property given by the Plaintiffs in connection with the Transaction against any postrescission loan balance which remains outstanding, and (iv) declaring that the Plaintiffs are not obligated to tender any monies to Wells Fargo as a condition of rescission or, alternatively, establishing equitable terms of tender which will enable them to retain their home.

In its Motion to Dismiss, Wells Fargo argues that although the regulations require that each borrower receive two copies of the rescission notice, extension of the rescission period is predicated on

---

[1] 11 U.S.C. § 101 *et seq*.

whether the borrowers received "actual notice" of their right to rescind. Since it is undisputed that the Plaintiffs received at least two copies of the notice, they should not be permitted such a draconian remedy as rescinding a seven-year-old transaction. In any event, Wells Fargo further argues, any rescission rights expired in 2009 pursuant to the MCCCDA's four-year expiration provision. Finally, Wells Fargo argues the Complaint should be dismissed because the Plaintiffs have failed to plead facts plausibly supporting their ability to tender the loan proceeds in order to complete rescission.

The Plaintiffs oppose the Motion to Dismiss and maintain the validity of their right to rescind. I conducted a nonevidentiary hearing on the Motion to Dismiss on May 17, 2012, and now make the following rulings.

IV. DISCUSSION

A. *The Motion to Dismiss Standard*

FED. R. CIV. P. 8(a)(2), made applicable to adversary proceedings in bankruptcy by FED. R. BANKR. P. 7008(a), requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 127 S. Ct. 1955, 1964 (2007) *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). To survive a Rule 12(b)(6) motion to dismiss such as Wells Fargo has made here, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009), *quoting Twombly*, 550 U.S. at 570. The plausibility standard is not akin to a "probability requirement" but requires more than a sheer possibility that a defendant has acted unlawfully. *See Iqbal*, 556 U.S. at 678. In evaluating the adequacy of a complaint, the First Circuit adopts a two-pronged approach. *See Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011). The first prong is to identify the factual allegations and to distinguish them from "statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory." *Id.* The second prong asks whether the

4

factual allegations would "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 159 *quoting Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### B. *Whether the Plaintiffs Have Stated a Claim for Rescission Under the MCCCDA*

#### 1. Relevant MCCCDA Background

The Massachusetts legislature closely modeled the MCCCDA after the consumer protection provisions provided in the federal Truth in Lending Act ("TILA"). The TILA and the MCCCDA were enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. 1601(a); *In re Giza*, 428 B.R. 266, 271 (Bankr. D. Mass. 2010). Although the MCCCDA is the operative law in Massachusetts,[2] its similarity to the TILA requires that the former be construed in accordance with the latter. *See McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir. 2007). The MCCCDA directs the Commissioner of Banks to prescribe rules and regulations as may be necessary in carrying out its provisions. MASS. GEN. LAWS ch. 140D, § 3(a). These regulations are codified in section 32 of title 209 of the Code of Massachusetts Regulations.

---

[2] The Board of Governors of the Federal Reserve System has exempted credit transactions within Massachusetts that are subject to the MCCCDA from chapters two and four of the TILA. *See* 48 Fed. Reg. 14882, 14890 (April 6, 1983). Consequently, consumer borrowers in Massachusetts must seek rescission under the MCCCDA and not the TILA. The TILA will preempt Massachusetts law only to the extent the MCCCDA is inconsistent with the provisions of the TILA. *See* 15 U.S.C. § 1610(a)(1) ("Except as provided in subsection (e) of this section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency.").

Subject to exceptions not relevant here, the MCCCDA gives a borrower[3] in any consumer credit transaction in which a security interest in the borrower's principal dwelling arises a limited right to rescind the transaction:

> [T]he obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required by this chapter, whichever is later, by notifying the creditor, in accordance with regulations of the commissioner, of his intention to do so.

MASS. GEN. LAWS ch. 140D, § 10(a). The regulations of the commissioner, 209 MASS. CODE REGS. § 32.23 (2005), describe the "information" required by § 10(a) as the following:

1. The retention or acquisition of a security interest in the consumer's principal dwelling.
2. The consumer's right to rescind the transaction.
3. How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
4. The effects of rescission, as described in 209 CMR 32.23(4).[4]
5. The date the rescission period expires.

209 MASS. CODE REGS. § 32.23(2)(a). This information must appear on the "rescission forms." MASS. GEN. LAWS ch. 140D, § 10(a). The "material disclosures" required by MASS. GEN. LAWS ch. 140D, § 10(a) are "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the

---

[3] The relevant text of the MCCCDA uses the term "obligor," see MASS. GEN. LAWS ch. 140D, § 10(a); the regulations speak of the "consumer," see 209 C.M.R. 32.23; and the parties' pleadings and many reported decisions refer to "borrowers." See e.g., In re Alger, 464 B.R. 519, 522 (Bankr. D. Mass. 2012); In re Giza, 428 B.R. 266, 271 (Bankr. D. Mass. 2010). Because the Defendant has not challenged either plaintiff's standing to seek relief under the MCCCDA, I shall proceed without deciding whether there is any meaningful difference under the MCCCDA between "obligors," "consumers," and "borrowers." For the sake of consistency, I shall use the term "borrower" except when directly quoting the statute or regulations.

[4] The description of "effects of rescission" in § 32.23(4) largely reiterates MASS. GEN. LAWS ch. 140D, § 10(b). The borrower's rescission voids the security interest, and she is not liable for any finance or other charges arising by operation of law. MASS. GEN. LAWS ch. 140D, § 10(b). Within twenty days of rescission, the creditor must return any money or property it received in connection with the transaction. See id. Once the creditor has done this, the borrower must tender the property she received to the creditor, except that if return of the property in kind would be impracticable or inequitable, the borrower may instead tender its "reasonable value." See id. Finally, § 10(b) provides that these procedures shall apply "except when otherwise ordered by a court."

6

total of payments, and the payment schedule, and the disclosures and limitations referred to in 209 MASS. CODE REGS. 32.23(3) and (4) and 32.35(2)(b)." 209 MASS. CODE REGS. 32.23(1)(c), fn.48.

A borrower's right of rescission expires four years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first.[5] The four-year expiration date for a rescission action applies regardless of whether the lender has delivered the "information and forms" and "any other disclosures" to the borrower, unless the Commissioner of Banks institutes a proceeding to enforce the provisions of the MCCCDA. *Id.* Effective September 13, 1995, the Massachusetts legislature added subsection 10(i) to the MCCCDA, which allowed a borrower to rescind after the initiation of any foreclosure process, subject to the four-year expiration date of § 10(f). MASS. GEN. LAWS ch. 140D, § 10(i). The subsection includes the following provision: "Nothing in this section shall be construed so as to affect a consumer's right of recoupment under the laws of the commonwealth." *Id.*, § 10(i)(3).[6]

---

[5] Section 10(f) states:
> An obligor's right of rescission shall expire four years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor, except that if (1) the commissioner institutes a proceeding to enforce the provisions of this section within four years after the date of consummation of the transaction, (2) the commissioner finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire four years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

MASS. GEN. LAWS ch. 140D, § 10(f).

[6] The TILA contains a similar provision. Section 1635(i)(3) reads, "Nothing in this subsection affects a consumer's right of rescission in recoupment under State law." 15 U.S.C. § 1635(i)(3). The substantive differences between the TILA and the MCCCDA in this respect are two. First, § 1635(i)(3) uses the word "subsection," thereby limiting its operative scope to subsection (i) of § 1635, while § 10(i)(3) of the MCCCDA uses the word "section," indicating that nothing in the entire section of the MCCCDA covering the right of rescission should be construed to limit a borrower's right of recoupment under Massachusetts law. Second, the TILA speaks of a "right of rescission in recoupment," while the MCCCDA mentions only of a "right of recoupment."

7

### 2.  The Right to Rescind under the MCCCDA Has Expired

The Plaintiffs consummated the Transaction with Wells Fargo in February, 2005, and they do not purport to have rescinded the Transaction until, in February 2012, they filed the complaint commencing this adversary proceeding.  According to Wells Fargo, it follows that the Plaintiffs' right to rescind expired in February 2009 by operation of the MCCCDA's four-year expiration provision, set forth in MASS. GEN. LAWS ch. 140D, § 10(f).  The Plaintiffs disagree.  They contend that they have commenced this rescission action under a theory of common law recoupment, and, therefore, that it is exempt from the MCCCDA's four-year expiration rule.  For the following reasons, I conclude that the Plaintiffs cannot rescind a transaction by way of recoupment at all, and they may not do so by any means after the MCCCDA's four-year expiration date.

#### a.  Whether Rescission is a Form of Recoupment

First, in Massachusetts law, rescission is neither recoupment nor a form of recoupment and, by its nature, cannot be accomplished by way of recoupment.  Recoupment is a common law affirmative defense.  The Supreme Judicial Court explained Massachusetts law on recoupment as follows:

> Recoupment was a common law concept, a defendant's claim arising out of the transaction that formed the basis of the plaintiff's claim; it was generally if not always timely, no matter when actually pleaded in the action, if the plaintiff's claim was timely; it served, if the defendant succeeded on it, to reduce or extinguish the plaintiff's claim, but it could not result in an affirmative recovery for the defendant.

*Bose Corp. v. Consumers Union of U.S., Inc.*, 367 Mass. 424, 427 (1975).  This is consistent with the understanding of the doctrine in the federal courts.[7]  Recoupment requires two claims, both arising out

---

[7] *Bolduc v. Beal Bank, SSB*, 167 F.3d 667, 672 (1st Cir. 1999) ("the common law doctrine of recoupment . . . allows a defendant to 'defend' against a claim by asserting—up to the amount of the claim—the defendant's own claim against the plaintiff growing out of the same transaction. . . . Recoupment is allowed even where the defendant's claim would be barred, if asserted in a separate action, by the statute of limitations."); *United Structures of America, Inc. v. G.R.G. Engineering, S.E.*, 9. F3d 996, 998 (1st Cir. 1993) (Recoupment is a defense, "a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction."  It "is intended to permit . . . judgment to be rendered that does justice in view of the one transaction

of the same transaction, one of which serves to reduce the other.  In *United Structures of America*, the First Circuit contrasted "recoupment" and "set off":

> If Smith sues Jones for $10,000 for grain that Smith supplied, and Jones seeks to reduce the judgment by $5,000 representing Smith's (unrelated) unpaid rental of Jones' summer cottage, Jones is seeking a *setoff*.  "Recoupment," on the other hand, is "a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant *arising out of the same transaction*."  [Black's Law Dictionary 1147 (5th ed. 1979).]  If Smith sues Jones for $10,000 for grain that Smith supplied, and Jones seeks to reduce the judgment by $5,000 representing Jones' expenditure to dry out Smith's (defectively) wet grain (or the cost of buying replacement grain, or the grain's lost value), Jones is seeking a *recoupment.*

9 F.3d at 998 (internal citations omitted).  Recoupment, then, covers reciprocal obligations arising out of the same transaction.  Charles Jordan Tabb, The Law of Bankruptcy § 3.8 (2d ed. 2009).  The rationale of recoupment is that there is but one recovery due on a contract, and that recovery must be determined by taking into account the mutual benefits and obligations of the contract.  *In re Women's Technical Institute, Inc.*, 200 B.R. at 81.  Both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.  *Id.*

Rescission, on the other hand, is not in the first instance a right to monetary relief but an annulment of a contract—in this instance, the Note and Mortgage—*ab initio*.  Black's Law Dictionary 1306-07 (6th ed. 1990) (defining "rescission of contract").  Monetary rights may and often do flow from

---

as a whole."); *Fidler v. Central Cooperative Bank (In re Fidler)*, 226 B.R. 734, 737 (Bankr. D. Mass. 1998) ("The common law doctrine of recoupment is a well-established method of reducing "part of the plaintiff's claim because of a right in the defendant arising out of the same transaction."); *In re Women's Technical Institute, Inc.*, 200 B.R. 77, 81 (Bankr. D. Mass. 1996) ("Recoupment is the satisfaction of an obligation by the crediting against it of a reciprocal obligation arising from the same transaction, typically the same contract.").  Black's Law Dictionary defines "recoupment" as "a right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract.  It implies that the plaintiff has cause of action, but asserts that defendant has counter cause of action growing out of breach of some other part of same contract on which plaintiff's action is founded, or for some cause connected with contract."  Black's Law Dictionary 1275 (6th ed. 1990).

9

it, but not necessarily,[8] and, in any event, rescission itself is not a monetary right but simply the undoing or unmaking of the contract.  Rescission therefore simply does not fit into the mold a recoupment defense.  It is not a damages claim and therefore cannot reduce a reciprocal damages claim.  Recoupment and rescission are apples and oranges.  Recoupment requires all apples.  Rescission voids the transaction; recoupment works an equitable offsetting of liabilities *within* the transaction.

Moreover, rescission under the MCCCDA does not flow from the same transaction as that which forms the basis of the mortgagee's claim.  The claim of Wells Fargo is based on the Note and Mortgage.  Statutory rescission under the MCCCDA would *void* the Note and Mortgage.  Upon rescission, the legal basis on which Wells Fargo is asserting its claim would cease to exist.[9]  There would be no reciprocal obligation stemming from the transaction that is the basis of Wells Fargo's claim.  Rather, rescission is based on two outside grounds:  (i) alleged defects in MCCCDA-required notice and (ii) the Plaintiffs' election to rescind.  The former is not the same basis as the basis of Wells Fargo's claim, but even if the defects in notice could somehow be deemed part of the "same transaction," loosely conceived, as the Note and Mortgage, they are not the entire basis of the Plaintiffs' right of rescission.  The right is also based on a further and later elective act that is not part of that transaction:  the act of rescission.[10]  Under MCCCDA, rescission is an elective remedy, contingent upon an election to rescind.  The election to rescind, if one was properly made here, was a separate, later event.

---

[8] Rescission can happen before money actually changes hands.

[9] This is not to say the parties would be left with no rights at all.  Rescission would trigger obligations under MASS. GEN. LAWS ch. 140D, § 10(b) on the part of both borrower and lender to return the value of any property each received in the transaction.  *See also* 209 MASS. CODE REGS. § 32.23 (describing the effects of rescission).

[10] Rescission is effected, in the first instance, not by judicial action or judicial relief but by the obligor's "notifying the creditor, in accordance with regulations of the commissioner, of his intention to do so."  MASS. GEN. LAWS ch. 140D, § 10(a); *In re Giza*, 428 B.R. at 271 ("To rescind, the borrower must notify the creditor of his or her intent to do so, in accordance with regulations of the commissioner.").  The creditor may of course contest the validity or efficacy of the rescission; and, in a contested situation, the effective date of rescission may be an issue.  Whether or not judicial action is necessary to perfect the rescission, however, rescission is in the first instance an elective act of the obligor.

Although the Plaintiffs rely heavily on MCCCDA's preservation in § 10(i)(3) of "a consumer's right of recoupment under the laws of the commonwealth," MASS. GEN. LAWS ch. 140D, § 10(i)(3), they offer no explanation of whether and how, under Massachusetts law, rescission can be effected by recoupment. The First Circuit recently held that while the MCCCDA preserves a consumer's right of recoupment, it does not create the right preserved. *In re DiVittorio*, 670 F.3d 273, 286 (1st Cir. 2012). It is incumbent upon the Plaintiffs to specify the law on which they are relying, but they have offered nothing.

I am mindful that two of my colleagues in the Bankruptcy Court for this district have held that a claim for rescission under the MCCCDA may be asserted by way of recoupment. *See Fidler v. Central Cooperative Bank (In re Fidler)*, 226 B.R. at 737, affirming earlier holding in *Fidler v. Central Cooperative Bank (In re Fidler)*, 210 B.R. 411, 414–17 (Bankr.D.Mass.1997); and *In re Botelho*, 195 B.R. 558, 563 (Bankr.D.Mass.1996). See also *Maxwell v. Fairbanks Capital Corp. (In re Maxwell)*, 281 B.R. 101, 124 (Bankr. D. Mass. 2002) (following *Fidler*). *But see Kelly v. Deutsche Bank National Trust Company*, 789 F.Supp.2d 262, 266-67 (D. Mass. 2011) (borrower whose right of rescission under the MCCCDA has expired may not revive the action "by restyling what in effect is a counterclaim as a recoupment"). However, in neither *Fidler* nor *Botelho* did the court address the difficulties raised above. And in *Botelho*, the court ultimately based its ruling—that rescission could be asserted defensively—not on the preservation of the right of recoupment in MASS. GEN. LAWS ch. 140D, § 10(i)(3) but on an entirely separate Massachusetts statute, MASS. GEN. LAWS ch. 260, § 36, addressed below, that preserves *counterclaims* for defensive use without regard to laws relative to limitations of actions. *Botelho,* which has in any event been abrogated by the Supreme Court's holding in *Beach v. Ocwen Federal Bank*, 118 S.Ct. 1408 (1998), therefore stands at best for the proposition that rescission under the MCCCDA may be asserted defensively as a counterclaim, not that such defensive use is appropriately labeled recoupment.

For all these reasons, I conclude that rescission under the MCCCDA may not be effected by way of recoupment.[11]  The interposition of the MCCCDA right of rescission as a defense is not a defense in the nature of recoupment.  Rather, it is a counterclaim being asserted defensively in response to the proof of claim filed by Wells Fargo in this case.

### b. Whether the Counterclaim for Rescission under the MCCCDA is Preserved by MASS. GEN. LAWS ch. 260, § 36

As an exception to the general rule that "[t]he provisions of law relative to limitations of actions shall apply to a counterclaim by the defendant," Massachusetts law states that "a counterclaim arising out of the same transaction or occurrence that is the subject matter of the plaintiff's claim, to the extent of the plaintiff's claim, may be asserted without regard to the provisions of law relative to limitations of actions."  MASS. GEN. LAWS ch. 260, § 36.  In *Botelho*, Judge Feeney held that this exception permitted a borrower to assert a right of rescission under the MCCCDA for the first time after the four-year period in MASS. GEN. LAWS ch. 140D, § 10(f), provided it did so only defensively.  Shortly thereafter, the Supreme Court abrogated *Botelho*'s holding.  In *Beach*, it held that the TILA's three-year expiration provision—which is identical to the parallel provision in the MCCCDA except only in duration—is not a statute of limitations because it does not limit the time in which to bring an action.  *Beach v. Ocwen Federal Bank*, 523 U.S. at 417-419, 118 S.Ct. at 1412-13.  Rather, it limits the life of the underlying right, such that there is no right to rescind, defensively or otherwise, after the three-year period has run.  *Id*.  Although *Beach* concerned a provision in the TILA and *Botelho* concerned the interaction between the parallel provision in the MCCCDA and MASS. GEN. LAWS ch. 260, § 36, the Supreme Court expressly indicated that its holding conflicts with that in *Botelho*.  *Id*. 523 U.S. at 415 n.5, 118 S.Ct. at 1411 n.5.

---

[11] This holding does not render the preserved right of recoupment meaningless.  Although the Plaintiffs have requested only rescission and not damages, the MCCCDA also makes provision for damages as an alternate form of relief.  MASS. GEN. LAWS ch. 140D, §§ 10(g) and 32.  *Cf. King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238, 251 (D. Mass. 2009) ("[R]escission is not the only remedy for violations of the duties imposed by TILA.  Congress envisaged other remedies or '[a]dditional relief . . . for violations of [TILA] not related to the right to rescind.'").

This court agrees. The four-year expiration provision in the MCCCDA mirrors its federal counterpart and should be construed in accordance with it. *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir. 2007); *In re DiVittorio*, 670 F.3d at 285. *Beach* therefore compels the conclusion that the four-year expiration provision in MASS. GEN. LAWS ch. 140D, § 10(f) is not a "provision[] of law relative to limitations of actions" within the meaning of MASS. GEN. LAWS ch. 260, § 36. Instead, it causes the underlying right itself to expire. Therefore , a right of rescission that is not exercised before the expiration date may not thereafter be exercised or enforced by any means, even defensively, whether by recoupment or by counterclaim.[12]

**CONCLUSION**

Their right to rescind under the MCCCDA having expired, the Plaintiffs have failed to state a claim on which relief may be granted.[13] Accordingly, the court will enter a separate order dismissing the Complaint and, insofar as it is interposed as an objection to the proof of claim of Wells Fargo, overruling the objection.

Date: July 6, 2012

_____
Frank J. Bailey
United States Bankruptcy Judge

---

[12] An indefinite right of rescission by recoupment would also render the expiration provision in § 10(f) virtually meaningless and cause the exception for recoupment to swallow the rule. After expiration of the time for rescission, a borrower could then simply stop paying its mortgage, wait for the mortgagee to commence an enforcement action, which it inevitably would do, and then, in defense, rescind. With an exception of this breadth, there would be little point in having an expiration provision at all.

[13] Having so concluded, I need not address Wells Fargo's other arguments for dismissal.